STATE of Minnesota, Petitioner,
Appellant,

v.

Richard Darrel EDWARDS, Respondent.

No. C3–91–1171.

Supreme Court of Minnesota.

June 5, 1992.

Hubert H. Humphrey, III, Atty. Gen., and Tom Foley, Ramsey County Atty., Darrell C. Hill, Asst. Ramsey County Atty., St. Paul, for appellant.

John M. Stuart, State Public Defender, Mark Nyvold, Asst. State Public Defender, St. Paul, for respondent.

WAHL, Justice.

Defendant stands charged by complaint with criminal sexual conduct in the second degree for allegedly engaging in sexual contact with a 7–year–old girl on July 6, 1990. This is a pre-trial appeal by the state from an order of the trial court excluding three extrajudicial statements made by the complainant, D.F., who the trial court determined was incompetent to testify. Reversing the court of appeals and the trial court, we hold that the trial court abused its discretion in ruling that the statements are inadmissible at trial.

Complainant lived with her 26–year–old mother, her 53–year–old maternal grandmother and defendant, her grandmother's 41–year–old husband or boy friend (their marital status is unclear from the record). Around 9:30 or 10:00 a.m. on July 6, 1990, defendant arrived home intoxicated and went to his room on the second floor of the house. Complainant went upstairs to play sometime between 11:15 and 11:30 a.m. Approximately 15 minutes later her mother went upstairs to check on her and looked through an open door into defendant's bedroom. The mother apparently is prepared to testify that she saw her daughter jump off the bed pulling down her skirt and shirt and contemporaneously saw defendant "stuff" his penis back into his pants and zip up his pants.

She immediately took complainant into another bedroom and called 911. We have listened to a tape recording of the call. The voices of both the mother and complainant are heard on the tape. The mother, who is emotional and frantic, asks the police 911 officer to come immediately because someone had sexually abused her daughter—"Just right now, I know he did it!" The 911 operator, who received the call at 11:42 a.m., asks the mother what happened, and the mother says, "What happened, daughter?" The complainant says something that sounds like "He tried to put his thing in my bootie," and then the mother says, "He was putting his thing in her bootie." The officer then obtains a description of the defendant, who according to the mother is still in the house, and says he will send a squad car out immediately.

On a tape recording of a subsequent call made by complainant, complainant is heard crying hysterically that defendant is trying to hurt her mommy. One can also hear what is apparently the sound of the police arriving. The police arrived within 5 or 6 minutes of the first call. The record indicates that the officer who arrived first asked complainant what happened and she told him defendant had put his thing in her bootie. Defendant was arrested. The complainant was taken to the hospital for an examination.

A police sergeant went to the hospital an hour or so later, at 1:10 p.m., and, in the examination room, talked with complainant, who said defendant forced her on the bed face down and held her there and took his penis out of his pants through the unzipped fly. She said defendant then got on top of her and started humping up and down trying to get his penis in her butt. She said she could feel it but did not know if it actually entered her.[1] The officer noted in his report, "She appeared very frightened, clinging to the hospital bed saying, 'You

---

1. The complainant mentioned other incidents of similar conduct.

have to put him in jail and don't ever let him out.'"

On November 1, 1990, 4 days before trial, the state mailed notice to the defense of its intent to present evidence of the out-of-court statements under several provisions of the Minnesota Rules of Evidence, including Rule 803(2) (excited utterance) and Rule 803(24) (so-called "catch-all" exception), and under Minn.Stat. § 595.02, subd. 3.[2] The notice was filed on November 2. The case came on for trial on November 5.

A pre-trial hearing to determine competency of the complainant to testify was held in the trial court's chambers, with the prosecutor, defendant and his attorney, and complainant's mother and grandmother present. The prosecutor examined the complainant to ascertain whether the child knew the difference between the truth and a lie. The prosecutor got complainant to promise she would tell the truth, asked her about school, and got her to say what she had done on Halloween and what she got for Christmas. The child's answers were generally appropriate until defense counsel started questioning her when she began to have difficulty answering. It appears from the record that at times the child was covering her eyes and looking at the ceiling. At one point she asked if she could go because "this is not doing me any good."

The trial court, meeting with the lawyers after the hearing, ruled orally that complainant was not competent to testify because she could "neither remember nor narrate what happened." The prosecutor moved for the admission of the hearsay statements. Defense counsel objected for lack of notice for preparation. Without hearing arguments, the trial court said it

was "going to deny the [prosecutor's] request under the circumstances based on all the things that have been brought to my attention including the testimony of the little girl this morning and the contents of the Court file." The trial court granted the state's motion for a stay to appeal the court's order and allowed the prosecutor to make an offer of proof on the record regarding the three out-of-court statements for purposes of the appeal. Defense counsel continued to object on the basis of the timeliness of the motion to introduce the statements, counsel's lack of knowledge of the existence of the 911 tape which was offered as an exhibit, and the possible violation of the defendant's right to confrontation if the statements were introduced.

The court of appeals decided the first appeal on April 30, 1991. The court remanded, requesting the trial court to make findings and otherwise rule on the specific hearsay admissibility issues because it could not determine if the trial court had abused its discretion without such findings. Finding it improper for the trial court to base the decision of the admissibility of the statements on the witness' competency to testify at trial, as the trial court apparently had done, the court of appeals noted that the trial court should consider whether there were sufficient indicia of reliability at the time the statements were made.

On remand, the trial court, apparently without briefing or argument, issued an order entitled "Additional Findings and Order" which stated:

Pursuant to the Opinion of the Court of Appeals, the Court hereby makes the following Findings in addition to those previously made:

Section 595.02, subdivision 3, provides that an out-of-court statement made by a child under 10 describing an act of sexual contact or penetration with or on the child by another not otherwise admissible is admissible if the trial court determines that there are "sufficient indicia of reliability" and the child either (a) testifies or (b) is "unavailable as a witness and there is corroborative evidence of the act" and sufficient notice of intent to offer the statement is given by the proponent to the adverse party.

---

**2.** Rule 803(2) provides that any "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule, whether or not the declarant is available as a witness.

Rule 803(24), one of the two "catch all" exceptions—the other is Rule 804(b)(5)—provides that a hearsay statement may be admitted, even if it is not admissible under any other exception, if the statement has "equivalent circumstantial guarantees of trustworthiness" and certain other requirements are satisfied.

1. The Court finds that the offer by the state of the child's out-of-court statements under Minnesota Rules of Evidence 803(2) are not admissible as an exception to the hearsay rule.

2. The Court finds, based on the testimony of the victim in court, that the statement of the child victim was unreliable at the time it was made to a representative of the police department and also to a 911 telephone operator as relating to Minn.Statutes 595.02(3) and *State v. Brouillette,* 286 N.W.2d 702.[3]

The court of appeals affirmed, as within the trial court's discretion, the trial court's ruling on the "excited utterance" exception to the hearsay rule but remanded for redetermination of admissibility under section 595.02. The court of appeals noted that the trial court again seemed to have based exclusion, at least in part, on the complainant's testimony at the competency hearing and further that it was not clear from the record whether the trial court considered the factors set forth in *State v. Lanam,* 459 N.W.2d 656, 661 (Minn.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 693, 112 L.Ed.2d 684 (1991).

The issues before us relate solely to the admissibility of the three out-of-court statements made by complainant: the statement to the 911 telephone operator; the statement to the police officer at the house; and, the statement to the sergeant at the hospital.

■ At the outset we note that the exclusion of these statements rather obviously "significantly reduces the likelihood of a successful prosecution." *State v. Joon Kyu Kim,* 398 N.W.2d 544, 551 (Minn. 1987). Accordingly, the state clearly has met its burden of establishing "critical impact" on the trial, which is a prerequisite to bringing this pre-trial appeal.

■ We address together the admissibility of the first two statements, because we believe that the admissibility of both these statements can be resolved by the same basic analysis, specifically, whether the statements are "excited utterances." We conclude that the statements are "excited utterances" and that the trial court abused its discretion in concluding otherwise.

The basic elements of an "excited utterance" under Minn.R.Evid. 803(2), quoted in footnote 2 of this opinion, are (a) that there be a startling event or condition, (b) that the statement relates to the event or condition, and (c) that the statement is made under the stress caused by the event or condition. Minn.R.Evid. 803(2) Advisory Committee comment (1977), *quoted in State v. Daniels,* 380 N.W.2d 777, 782 (Minn.1986). It is for the trial court, in the exercise of its discretion in making evidentiary rulings, to determine whether the declarant was sufficiently under the "aura of excitement." *Daniels,* 380 N.W.2d at 782. Like any evidentiary ruling, such a determination is subject to review pursuant to the abuse of discretion standard.

We have the advantage in the appeal in this case of having a tape recording of the complainant's first statement to the police as well as a recording that was made at the time the police first arrived at the scene. These recordings satisfy us that the complainant's statement on the telephone (one minute or so after the event) and her statement to the police officer (who appears to have begun his questioning shortly after the event) were clearly "excited utterances." *State v. Daniels,* cited above, and *In re Welfare of Chuesberg,* 305 Minn. 543, 233 N.W.2d 887 (1975), both strongly support this conclusion.[4]

3. *State v. Brouillette,* 286 N.W.2d 702 (Minn. 1979), has no relevance to any of the issues in this case.

4. In *Daniels,* the statements of children, ages 4 and 3, both declared incompetent to testify, were admitted under the exception even though the statements were made in response to questions sometime after the startling event (within

an hour) but while still under the aura of the event.

In *Chuesberg,* the statements of a 3–year old child were admitted under the exception even though the statements were made in response to a question a short time after the act causing excitement.

Assuming for purposes of analysis that the statements by complainant at the hospital were not made while still under the aura of excitement caused by the event, we conclude as a matter of law that the statements are admissible and that the trial court abused its discretion in excluding the statements.

In *State v. Dana,* 422 N.W.2d 246 (Minn. 1988), we discussed the nature of a hearing on the admissibility of such evidence. We there said that "the heart of the matter of determining whether to admit hearsay is that unreliable evidence should be kept from the jury; this is a legal determination * * *." *Id.* at 249. If there is a significant factual issue underlying the admissibility decision, the trial court "will often receive evidence pro and con on the issue." *Id.* "Even then, however, the trial court need not necessarily conduct [a] sort of mini-trial * * *." *Id.* In *Dana,* where there were no significant factual issues underlying the admissibility decision, we held that the trial court properly made its admissibility decision on the basis of reading all the relevant statements in the file, examining all the circumstances under which the statements were made, and listening to the arguments of the attorneys.

The circumstances that are relevant to the determination of the admissibility of the complainant's statements to the sergeant at the hospital are basically the same whether one is determining admissibility pursuant to Minn.Stat. § 595.02, subd. 3, or pursuant to Minn.R.Evid. 803(24), the "catch-all" exception. However, as we said in *State v. Larson,* 453 N.W.2d 42, 46 (Minn.1990),[5] there is no need to rely on the statute if evidence is admissible pursuant to Rule 803(24). Since there are no important factual issues relating to the admissibility of these statements and given the other unique circumstances of this case, which we have already summarized, we believe it is appropriate that we make the legal determination of the issue of admissi-

bility of these statements rather than remand to trial court to again give it the opportunity of deciding the issue according to the applicable criteria.

The main legal issue under Rule 803(24) is whether the statement has "circumstantial guarantees of trustworthiness" that are "equivalent" to those supporting admission of hearsay under traditional hearsay exceptions (such as the "excited utterance" exception). Given the United States Supreme Court's approach to deciding whether or not admissibility of hearsay statements by a child sex abuse victim pursuant to a "catch-all" exception violated the confrontation clause, a determination that admissibility would not violate the confrontation clause is tantamount to a decision that the evidence is admissible under the "catch-all" exception. Accordingly, our focus is on whether admissibility of the statements to the sergeant at the hospital passes muster under *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

The two leading Minnesota cases applying *Wright* are *State v. Lanam,* 459 N.W.2d 656 (Minn.1990), *cert. denied,* — U.S. —, 111 S.Ct. 693, 112 L.Ed.2d 684 (1991), and *State v. Larson,* 472 N.W.2d 120 (Minn.1991). As we made clear in those decisions, the *Wright* Court said that whether a statement by a child sex abuse victim offered pursuant to a "catch-all" exception contains sufficient "particular guarantees of trustworthiness" must be determined from the totality of the circumstances surrounding the actual making of the statement, not evidence corroborating the statement. *Wright,* 110 S.Ct. at 3148–49. As stated in *Lanam* in summarizing *Wright:*

> [T]he focus is not on all the circumstances, including evidence at trial corroborating the child's statements, but only on those circumstances actually surrounding the making of the statements. These circumstances include, but are not limited to, whether the statements were

---

5. In *Larson v. Minnesota,* — U.S. —, 111 S.Ct. 29, 112 L.Ed.2d 7 (1990), the United States Supreme Court granted certiorari, vacated the judgment, and remanded for further consideration in light of *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), decided after *Larson.* For our decision following remand, see *State v. Larson,* 472 N.W.2d 120 (Minn.1991), *cert. denied,* — U.S. —, 112 S.Ct. 965, 117 L.Ed.2d 131 (1992).

spontaneous, whether the person talking with the child had a preconceived idea of what the child should say, whether the statements were in response to leading or suggestive questions, whether the child had any apparent motive to fabricate, and whether the statements are the type of statements one would expect a child of that age to fabricate.

*Lanam*, 459 N.W.2d at 661 (citing *Wright*, 110 S.Ct. at 3149–52). We added in *Larson*, 472 N.W.2d at 125–26:

> Other circumstances identified by the Court in *Wright* include the "mental state" of the child at the time the statements were made and the "consistent repetition" of the child's statements during the same interview or conversation. 110 S.Ct. at 3150. In addition to considering whether the child had an apparent motive to fabricate, it would seem that the Court could consider whether the child had an apparent motive to speak truthfully. *State v. Conklin*, 444 N.W.2d 268, 276 (Minn.1989) (case preceding *Wright*).

Applying these factors to the circumstances surrounding complainant's statements to the sergeant at the hospital, the state argues that the statements are admissible and the defense argues that they are not. While we have assumed for purposes of analysis that the statements by complainant at the hospital were not made while still sufficiently under the aura of excitement caused by the event to justify their admission as "excited utterances," we note that the officer stated in his report, "She appeared very frightened, clinging to the hospital bed saying, 'You have to put him in jail and don't ever let him out.'" There is no indication that the officer had a preconceived notion of what the child should say or that the officer was merely trying to get the child to say what the officer wanted to hear. The child had no apparent motive to fabricate. The statements clearly are not the type of statements one would expect a child of that age to fabricate. Further, the statements not only had an immediately apparent "ring of credibility," *see State v. Larson*, 472

N.W.2d at 126, but were internally consistent during the interview.

■ The trial court, who had two opportunities to apply the *Wright* factors but did not do so, based exclusion expressly on "the testimony of the victim in court," *i.e.*, on the determination that the child was incompetent to testify. *Wright*, however, rejects a rule that prior out-of-court statements by an incompetent witness are per se unreliable. *Wright*, 110 S.Ct. at 3151–52. At most, complainant's difficulty in answering questions at the competency hearing called into question the child's ability to relate her perceptions to the trier of fact in a trial setting; it did not call into question her ability to perceive the events in question or to accurately relate the events to the 911 operator or to the police at the scene and at the hospital.

■ Finally, we reject defendant's argument that the state failed to give sufficient advance notice of intent to offer the evidence. Rule 803(24), on which we rely in admitting the statements to the sergeant at the hospital, provides that "a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name, address, and present whereabouts of the declarant." The defendant had actual notice of the statements, including the statements made on the 911 tape, from the police reports, which were attached to the complaint. While it would have been better had defense counsel had the opportunity to listen to the tape itself, any assumed initial disadvantage was cured by the remand for further hearing. If the defense had anything additional to add on remand, it presumably would have added it.

We hold that the extrajudicial statements made by the child to the 911 telephone operator, to the officer at the house, and to the officer at the hospital are substantively

admissible at trial. We reverse and remand the case for trial.

Reversed and remanded for trial.