**STATE of Minnesota, Respondent,**

v.

**Hussein Osman AHMED, Appellant.**

**No. A09–724.**

Court of Appeals of Minnesota.

May 11, 2010.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, MN, for respondent.

Michael J. Colich, Tania K.M. Lex, Colich & Associates, Minneapolis, MN, for appellant.

Considered and decided by BJORKMAN, Presiding Judge; KALITOWSKI, Judge; and MINGE, Judge.

## OPINION

BJORKMAN, Judge.

On appeal from his convictions of third-degree assault and second-degree criminal sexual conduct, appellant contends that (1) the district court abused its discretion in admitting the out-of-court statement of the child victim without considering the credibility of the testifying witness; (2) the state did not prove that prohibited sexual contact occurred; and (3) the jury was improperly instructed on the "particular cruelty" aggravating factor. Because the district court did not abuse its discretion in admitting the child's statement and there is sufficient evidentiary support for the jury's verdict, we affirm in part. But in light of the supreme court's recent decision in *State v. Rourke*, 773 N.W.2d 913 (Minn. 2009), regarding the determination of the particular cruelty aggravating factor, we reverse in part and remand for resentencing.

## FACTS

Appellant Hussein Osman Ahmed was charged with third-degree assault, in violation of Minn.Stat. § 609.233, subd. 3 (2006), and second-degree criminal sexual conduct, in violation of Minn.Stat. § 609.343, subd. 1(h)(ii) (2006), in connection with the abuse of three-year-old H.A.,

his wife M.A.'s son from a previous marriage. H.A. sustained pattern burns on multiple parts of his body, including his face, back, shoulder, abdomen, and penis. The patterns were consistent with the handle-end of silverware found in the family apartment.

Both M.A. and Ahmed were initially charged with felony child abuse. M.A. agreed to testify against Ahmed in exchange for leniency. She testified that on Saturday night, December 8, 2007, Ahmed returned home from a week-long trip. M.A. had bathed H.A. and put him to bed before Ahmed returned home, and H.A. appeared fine that evening. In the morning, Ahmed got up with H.A. and allowed M.A. to sleep in. After M.A. awoke, she noticed marks on H.A.'s face. During a diaper change, she discovered swelling and blistering on H.A.'s penis.

M.A. took her son to an urgent-care clinic that afternoon. The doctor diagnosed the blistering marks as a skin rash but recommended follow-up with the primary-care doctor. H.A.'s pediatrician could not diagnose the marks and referred H.A. to Children's Hospital. M.A. took H.A. to Children's Hospital on December 12. Once there, H.A. was admitted. The next day, H.A. was removed from his mother's care because of suspected child abuse and placed into foster care. M.A. denied burning H.A. or otherwise causing the marks on him.

On December 14, a police officer brought H.A. to CornerHouse for an interview with a child social worker. H.A. did not respond to any of the interviewer's questions either in English or through a Somali interpreter. Because H.A. had spent most of his life with his maternal grandmother, F.B., CornerHouse arranged for another interview on December 17, this time with F.B. present.

F.B. testified that H.A. ran to her when he saw her in the lobby, before the interview. When she hugged him, H.A. told her in Somali that her hugs hurt him. When she asked who did this to him, H.A. responded that "Abdirashiid" was the one who had hurt him. Abdirashiid is the familiar name by which M.A.'s family knew Ahmed. During the CornerHouse interview, H.A. again said nothing.

The district court declared H.A. incompetent to testify at trial. The court permitted F.B. to testify about the conversation she had with H.A. in the lobby at CornerHouse under the residual exception to the hearsay rule.

In addition to the charged offenses, the jury was asked to determine whether Ahmed committed either of the crimes with particular cruelty. The jury instruction stated, "If you find [Ahmed] guilty of either Count I or Count II, or both, you will have an additional issue to determine: ... Was the crime committed with particular cruelty." The instructions defined particular cruelty as "cruelty that is greater in degree than one would normally expect in the commission of the charged crimes," and they suggested factors to consider, including the amount of pain, the number of wounds, the type of injury, whether the injury was permanent, and whether the injury caused the victim to fear disfigurement.

The jury found Ahmed guilty of both offenses and found that he committed them with particular cruelty. The district court sentenced Ahmed to 180 months' imprisonment, a double upward departure from the presumed guidelines sentence for second-degree criminal sexual conduct. This appeal follows.

## ISSUES

I. Did the district court err in admitting H.A.'s out-of-court statement?

II. Is proof of aggressive intent sufficient to satisfy the statutory definition of sexual contact, which requires touching of intimate parts with "sexual or aggressive intent"?

III. Did the district court err in instructing the jury on "particular cruelty"?

## ANALYSIS

### I. The district court did not abuse its discretion in admitting F.B.'s testimony concerning H.A.'s out-of-court statement.

Ahmed argues that H.A.'s out-of-court statement to F.B. is inadmissible hearsay because it is not reliable. Ahmed contends that the court should have considered F.B.'s credibility, which it expressly did not, and that H.A.'s statement was not spontaneous or repeated, and lacked context.

The district court admitted F.B.'s testimony under the residual exception to the hearsay rule contained in Minn. R. Evid. 807.[1] The residual exception allows admission of statements that do not fall under the usual hearsay exceptions found in Minn. R. Evid. 803 and 804 but have "equivalent circumstantial guarantees of trustworthiness" upon a determination by the court that

(a) the statement is offered as evidence of a material fact;

(b) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(c) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Minn. R. Evid. 807. The rule includes a notice requirement that is not in dispute here. *See id.*

▄▄▄ Evidentiary rulings lie within the sound discretion of the district court. *State v. Amos,* 658 N.W.2d 201, 203 (Minn. 2003). But whether the admission of hearsay evidence violates a defendant's rights under the Confrontation Clause is a question of law that we review de novo. *State v. Caulfield,* 722 N.W.2d 304, 308 (Minn. 2006). Because H.A.'s statement is hearsay, we turn first to the question of whether admission of his statement violates Ahmed's Sixth Amendment rights. *See* Minn. R. Evid. 807 cmt. ("In criminal cases, offering hearsay statements against the accused from declarants who do not testify and are not subject to cross-examination, may implicate the constitutional right to confrontation.").

### A. The Confrontation Clause is not implicated by the admission of H.A.'s statement.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend IV; *accord* Minn. Const. art. 1, § 6. The Supreme Court determined in *Crawford* that the "Confrontation Clause test bars at trial all 'testimonial' out-of-court statements when the accused is not afforded 'a prior opportunity to cross-examine' the declarant." *State v. Bobadilla,*

---

1. Effective September 1, 2006, Minn. R. Evid. 803(24) (availability of declarant immaterial) and 804(b)(5) (declarant unavailable) were combined into the current Minn. R. Evid. 807 residual exception. *State v. Her,* 750 N.W.2d 258, 275 n. 22 (Minn.2008), *vacated on other* grounds by *Her v. Minnesota,* —— U.S. ——, 129 S.Ct. 929, 173 L.Ed.2d 101 (2009). Most of the cases cited herein refer to the earlier rules 803(24) and 804(b)(5). *Her* concluded that the same standards applied to the new rule as applied to the old. *Id.* at 275.

709 N.W.2d 243, 249 (Minn.2006) (quoting *Crawford v. Washington,* 541 U.S. 36, 61, 124 S.Ct. 1354, 1370, 158 L.Ed.2d 177 (2004)).

■ If a statement is not testimonial, then the Confrontation Clause is not implicated because the declarant is not a witness under the terms of the Sixth Amendment. *Davis v. Washington,* 547 U.S. 813, 821, 126 S.Ct. 2266, 2273, 165 L.Ed.2d 224 (2006); *State v. Tscheu,* 758 N.W.2d 849, 864 (Minn.2008). Thus, the Confrontation Clause is only implicated here if H.A.'s statement to F.B. was testimonial. *See Tscheu,* 758 N.W.2d at 864.

■ The district court determined that H.A.'s statement was not testimonial. We agree. Statements made to nongovernment questioners, who are "not acting in concert with or as an agent of the government" are considered nontestimonial. *State v. Scacchetti,* 711 N.W.2d 508, 514–15 (Minn.2006). The interview at CornerHouse was arranged by the lead police investigator as a standard part of the investigation of child abuse. A police officer drove F.B. to CornerHouse. Therefore any statement made in the interview is arguably testimonial. *See Bobadilla v. Carlson,* 575 F.3d 785, 791 (8th Cir.2009) (concluding that statements by child victim in interview by social worker as part of police investigation were testimonial).

But H.A. made his statement to F.B. when he first saw her in the lobby, outside of the interview room and before the interview began. Neither the police officer nor the social worker was involved in F.B.'s conversation with H.A. There was no evidence that F.B. was acting in any manner but on her own behalf when she asked H.A. about his injuries and who caused them. H.A. was expressing pain to a close relative from whom he expected help and comfort. On this record, the admission of his statement does not implicate Ahmed's Sixth Amendment right to confrontation.

**B. The district court did not abuse its discretion in admitting H.A.'s statement under the residual hearsay exception.**

■ "A determination that a statement meets the foundational requirements of a hearsay exception is reviewed for an abuse of discretion." *Holt v. State,* 772 N.W.2d 470, 483 (Minn.2009). The burden is on the defendant to show that the district court abused its discretion and that the defendant was prejudiced thereby. *Amos,* 658 N.W.2d at 203.

The residual exception allows admission of statements not falling under one of the accepted hearsay exceptions that have "equivalent circumstantial guarantees of trustworthiness." Minn. R. Evid. 807. In addition to making this determination of reliability, the district court must find that (1) the statement relates to a material fact, (2) the statement is more probative on that point than any other evidence that can be secured by reasonable methods, and (3) the admission of the statement serves the interests of justice and the general purpose of the rules of evidence. Minn. R. Evid. 807. "The court should make findings explicitly on the record unless there is a waiver, ... or the basis of the ruling is obvious." *State v. DeRosier,* 695 N.W.2d 97, 105 (Minn.2005) (quotation omitted).

■ Here, the basis for the district court's ruling on the three enumerated factors is obvious and not contested. Because H.A. was incompetent to testify, F.B.'s testimony was material. It was more probative as to who committed the criminal act than other evidence adduced at trial and its admission served the interests of justice. Accordingly, the focus of our analysis is on Ahmed's challenge to the district court's reliability determination.

In considering the reliability of statements offered under the residual exception, courts follow the "totality of the circumstances approach, looking to all relevant factors bearing on trustworthiness to determine whether the extrajudicial statement has circumstantial guarantees of trustworthiness" equivalent to other hearsay exceptions. *State v. Robinson*, 718 N.W.2d 400, 408 (Minn.2006) (quotations omitted). This "totality of the circumstances" analysis derives from the Supreme Court's analysis of the residual exception in *Idaho v. Wright*, 497 U.S. 805, 819–820, 110 S.Ct. 3139, 3148–49, 111 L.Ed.2d 638 (1990). *See State v. Edwards*, 485 N.W.2d 911, 915 (Minn.1992) (applying *Wright*, 497 U.S. at 819–820, 110 S.Ct. at 3148–49).[2]

Ahmed argues that the district court abused its discretion by (1) failing to evaluate F.B.'s credibility when determining the reliability of the statement; and (2) determining that the statement is reliable despite its lack of spontaneity or repetition and its lack of sufficient detail to be informative. We disagree.

The relevant circumstances under rule 807 are "those circumstances actually surrounding the making of the statements." *State v. Lanam*, 459 N.W.2d 656, 661 (Minn.1990), *cert. denied*, 498 U.S. 1033, 111 S.Ct. 693, 112 L.Ed.2d 684 (1991). In child-abuse cases, these circumstances include whether the statement was spontaneous, whether the questioner had a preconceived idea of what the child should say, whether the statement was in response to leading questions, whether the child had any apparent motive to fabricate, whether the statements are of the type one would expect a child of that age to fabricate, whether the statement remained consistent over time, and the mental state of the child at the time of the statements. *Robinson*, 718 N.W.2d at 410; *Edwards*, 485 N.W.2d at 916; *Lanam*, 459 N.W.2d at 661.

Ahmed relies on *State v. Conklin*, 444 N.W.2d 268 (Minn.1989), for the proposition that the credibility of the witness who testifies to the out-of-court statement is another circumstance that must be considered before reliability is determined. This reliance is misplaced. Although *Conklin* does direct the district court to consider the reliability of the witness who will testify to a child sex-abuse victim's hearsay statement, that case turned on the application of Minn.Stat. § 595.02, subd. 3 (1998), which specifically requires that the person to whom the statement is made be reliable. 444 N.W.2d at 276. The statute, by its terms, does not apply when the challenged statement is otherwise admissible under a rule of evidence. *See State v. Hollander*, 590 N.W.2d 341, 346 (Minn.App.1999) ("[T]here is no need to rely on [Minn.Stat. § 595.02] if evidence is admissible pursuant to [the residual exception].").

A party seeking admission of an out-of-court statement under the residual exception must "establish[ ] that the totality of the circumstances surrounding the making of the statements show the statements were sufficiently trustworthy—

**2.** In *Edwards*, the Minnesota Supreme Court stated that "a determination that admissibility would not violate the confrontation clause is tantamount to a decision that the evidence is admissible under the [residual] exception." 485 N.W.2d at 915. *Crawford's* rejection of the reliability standard for determining the admissibility of hearsay under the Confrontation Clause has necessitated a separation of the Sixth Amendment analysis and the reliability analysis. Nevertheless, the Minnesota Supreme Court continues to utilize the same reliability standard based on *Wright* in its post-*Crawford* hearsay decisions. *See Her*, 750 N.W.2d at 275 (listing factors to consider under Minn. R. Evid. 807 trustworthiness evaluation derived from multiple pre-*Crawford* cases).

that is, that it is particularly likely that the declarant was telling the truth at the time of making the statements." *Lanam*, 459 N.W.2d at 661 (quotations omitted). The focus of rule 807 is the statement, not the testifying witness who heard the statement. Similarly, the analysis required by the rule focuses on whether the statement itself is reliable, not whether the person to whom the statement is made is reliable. That makes sense because the credibility of the testifying witness may be tested through cross-examination in court.

The district court considered numerous factors in determining that H.A.'s statement had circumstantial guarantees of trustworthiness. The district court considered the fact that the statement was spontaneous and short, as it was in response to the pain caused by F.B.'s hug. H.A. later repeated his comments to many other family members. And though the statement was made a week after the events occurred, the district court pointed to the fact that this was the first time H.A. had seen his primary care-taker since this traumatic event. F.B. was one of the few Somali-speaking persons he had encountered in that week, and she understood what he said to her. F.B. used open-ended questions when she asked "what is wrong?" and "who did this?" The district court also considered the statement reliable because H.A. had no motive to fabricate. Given H.A.'s young age and the trauma of abuse, it is not unreasonable that he would keep his thoughts to himself until he was with someone he trusted. For similar reasons, it is not unreasonable that he would express pain to his grandmother, hoping for help, when he had not expressed it to other people.

On this record, we conclude that the district court did not abuse its discretion in determining H.A.'s statement to his grandmother was reliable and met the other requirements for admission under the residual hearsay exception.

## II. Proof of touching with aggressive intent alone is sufficient to satisfy the statutory definition of sexual contact.

 In considering a claim of insufficient evidence, this court's review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict they did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). The reviewing court must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989). We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn.2004).

 Ahmed argues that there was not sufficient evidence to sustain the criminal-sexual-conduct verdict because there was no evidence that he committed sexual conduct. This argument is premised on Ahmed's reading of the statute and his assertion that there was no evidence at trial that he touched H.A. with sexual intent. These arguments are unavailing.

 ▪ "When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Fam. Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000) (quotations and citation omitted). We may not disregard the letter of the law in pursuit of the spirit

when the words of a statute are clear and free from all ambiguity. Minn.Stat. § 645.16 (2008).

■ Minnesota law defines second-degree criminal sexual conduct as conduct in which "[t]he actor has a significant relationship to the complainant and the complainant was under 16 years of age at the time of the sexual contact, and ... the complainant suffered personal injury." Minn.Stat. § 609.343, subd. 1(h)(ii). For purposes of this statute, "sexual contact" is defined as "the intentional touching by the actor of the complainant's intimate parts," including the genital area, with "sexual or aggressive intent." Minn.Stat. § 609.341, subds. 5 (defining intimate parts), 11(b)(i) (defining sexual contact) (2006). Ahmed cites no authority for the proposition that a conviction may only lie when there is evidence of touching with both sexual and aggressive intent. We may not ignore clear statutory language in pursuit of its spirit or otherwise. Minn.Stat. § 645.16. We reject Ahmed's effort to read the disjunctive "or" out of the statute.

Ahmed's argument concerning the sufficiency of the evidence also fails. The evidence included M.A.'s testimony against him, the testimony of a medical expert about the type and location of H.A.'s wounds, and F.B.'s testimony about H.A.'s identification of Ahmed as his abuser. Based on our review of the record, and viewing the evidence in the light most favorable to the verdict, we conclude that the jury's verdict was supported by substantial evidence.

### III. The Minnesota Supreme Court's recent decision in *Rourke* requires remand for resentencing.

■ Ahmed alleges that the district court erred in instructing the jury on the aggravating factor of "particular cruelty." But we need not consider the substance of Ahmed's argument, because his claims are resolved by the supreme court's recent holding in *Rourke.*

In *Rourke,* the supreme court held that the aggravating factor of particular cruelty presents a legal issue for the district court. 773 N.W.2d at 920. This legal determination should be based on "additional facts found by the jury [that] provide the district court a substantial and compelling basis for imposition of a sentence outside the range on the grid." *Id.* As a result,

[a] district court must submit to a jury the question of whether the State has proven beyond a reasonable doubt the existence of additional facts, which were neither admitted by the defendant, nor necessary to prove the elements of the offense, but which support reasons for departure. But the question of whether those additional facts provide the district court a reason to depart does not involve a factual determination and, therefore, need not be submitted to a jury.

*Id.* at 921.

*Rourke* was released just days after the state submitted its responsive brief, and it is now the law in Minnesota. This court recently remanded a case for resentencing that was pending when *Rourke* was decided. *See Carse v. State,* 778 N.W.2d 361 (Minn.App.2010). In that case, we concluded that "[u]nder *Rourke,* the special verdict finding in this case—'[t]he victim was treated with particular cruelty for which the individual offender should be held responsible'—is insufficient to support the aggravated sentence." *Id.* at 372–73 (alteration in original).

As in *Carse,* the jury question in this case, "[w]as the crime committed with particular cruelty," is insufficient to support the aggravated sentence. Accordingly, we remand for resentencing.

## DECISION

The district court did not abuse its discretion by admitting H.A.'s out-of-court statement under the residual hearsay exception without analyzing the credibility of the testifying witness. The jury's verdict is supported by substantial evidence. But we remand for resentencing pursuant to *Rourke*.

**Affirmed in part, reversed in part, and remanded.**