*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-1000**

State of Minnesota,
Respondent,

vs.

Chevaze Darrell Ward,
Appellant.

**Filed June 20, 2016**
**Affirmed**
**Reilly, Judge**

Ramsey County District Court
File No. 62-CR-14-4714

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Worke, Presiding Judge; Reilly, Judge; and Smith, Tracy, Judge.

## UNPUBLISHED OPINION

**REILLY**, Judge

        Appellant challenges his second-degree murder conviction on the grounds that

(1) the evidence was insufficient to establish that he was not acting in self-defense against

an unprovoked attack; (2) the prosecutor committed misconduct during closing argument by impermissibly shifting the burden of proof; (3) the district court abused its discretion by admitting evidence under the excited-utterance exception to the hearsay rule; and (4) appellant's trial counsel was ineffective. We affirm.

## FACTS

The present action arises out of appellant Chevaze Darrell Ward's second-degree intentional murder conviction for the death of L.H. In June 2014, L.H. telephoned appellant's ex-girlfriend to discuss a debt that she owed L.H. Later, appellant called L.H. on the telephone. L.H.'s sister, S.L., was present with L.H. for the phone call and described L.H. as seeming "upset and agitated" because appellant "had threatened to kill [L.H.] . . . over the phone." S.L. did not consider the threat to be serious because the families grew up together and often fought to resolve their differences.

The following day, appellant was riding in a car with R.B., C.C., and T.W., when they noticed L.H. in his car at a gas station. Appellant told the three other men that he was in a dispute with L.H. over the repayment of a debt and intended to fight L.H. when he saw him. Because he could not physically fight, appellant stated that he would have to "shoot someone." The men continued driving to the intersection of Case Avenue and Arcade Street in St. Paul, four or five blocks away from the gas station. C.C. stopped at a red light, and L.H. drove up alongside C.C.'s car. L.H. put his car into park, got out of his car, and ran around to the rear driver's side door of C.C.'s car where appellant was seated. L.H. opened appellant's door and began hitting him and "punching him in his face." C.C. estimated that L.H. punched appellant "[m]aybe six or seven" times. The other three men

2

in the car were neither encouraging nor stopping the fight, and C.C. did not attempt to drive away. Appellant shot L.H. two to three times, and L.H. fell to the ground.

After shooting L.H., appellant jumped out of the car and ran away, discarding some of his clothing as he ran. The other three men helped L.H. into the car and drove him to a nearby fire station. The EMTs at the fire station provided medical assistance to L.H. and called for an ambulance to transport him to the hospital. Medical efforts to revive L.H. were unsuccessful, and L.H. was declared dead at the hospital. The medical examiner testified that L.H. died from exsanguination, or bleeding to death, due to the contact gunshot wound to the chest and classified the death a homicide.

Police officers responded to the scene of the shooting and found appellant walking away from the intersection, carrying a white tank top in his hands, sweating, and breathing heavily. Appellant was taken into custody. Police officers found the gun hidden in a white athletic sock on the ledge of a retaining wall in front of a nearby house, and also recovered cartridge casings, an athletic shoe, and blood samples from the scene. The Bureau of Criminal Apprehension generated DNA profiles from the athletic sock and the gun and concluded that appellant could not be excluded as a contributor to the DNA found in the sock and on the magazine of the gun. The state charged appellant with one count of second-degree intentional murder in violation of Minn. Stat. § 609.19, subd. 1(1) (2012), and one count of second-degree unintentional felony murder in violation of Minn. Stat. § 609.19, subd. 2(1) (2012).

Appellant entered pleas of not guilty and the matter proceeded to a jury trial. The jury found appellant guilty of the charges. At sentencing, the district court adjudicated

3

appellant guilty of second-degree intentional murder and committed him to the commissioner of corrections for 388 months.  This appeal follows.

## D E C I S I O N

### Sufficiency of the Evidence

Our review of a sufficiency-of-the-evidence challenge is "limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. DeRosier*, 695 N.W.2d 97, 108 (Minn. 2005) (quotation omitted).  We assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989).  Inconsistencies in testimony go to witness credibility, which is an issue for the jury.  *State v. Pendleton*, 706 N.W.2d 500, 511-12 (Minn. 2005).

Appellant asserted a claim of self-defense.  Minnesota law provides that "reasonable force may be used upon or toward the person of another without the other's consent" in certain circumstances, including "when used by any person in resisting or aiding another to resist an offense against the person."  Minn. Stat. § 609.06, subd. 1(3) (2012).  The intentional taking of the life of another person is not authorized under section 609.06, "except when necessary in resisting or preventing an offense which the actor reasonably believes exposes the actor or another to great bodily harm or death."  Minn. Stat. § 609.065 (2012).  The defendant bears the burden of presenting evidence to support a claim of self-defense.  *State v. Johnson*, 719 N.W.2d 619, 629 (Minn. 2006).  Once the defendant satisfies this burden, the state has the "ultimate burden" of disproving one or more of these

elements beyond a reasonable doubt. *State v. Radke*, 821 N.W.2d 316, 324 (Minn. 2012). The elements of self-defense are:

> (1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he or she was in imminent danger of death or great bodily harm; (3) the existence of reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat to avoid the danger.

*Johnson*, 719 N.W.2d at 629 (quotation omitted).

The first and fourth elements are not in dispute. The crux of the dispute turns on whether the state disproved the second and third factors: that appellant had an actual and honest belief that he was in imminent danger of great bodily harm or death, and that there was a reasonable basis for that fear.

A defendant's actual and honest belief that he faces imminent danger "is subjective and depends upon the defendant's state of mind." *Id.* at 630. Appellant did not testify that he believed himself to be in imminent danger of great bodily harm or death. However, a defendant need not testify and provide direct evidence of his state of mind, as such evidence may be established circumstantially. *Id.* at 630-31 (stating that "inferences drawn from a person's words or actions in light of all the surrounding circumstances" can provide evidence to support self-defense claim (quotation omitted)). Appellant contends that the state failed to disprove this factor because there was a "stark disparity" between the physical attributes of L.H. and of appellant. L.H. was approximately six and a half feet tall and muscular and weighed about 230 pounds, while appellant was described as "[f]at" and "bowlegged." However, the jury also heard testimony that appellant was "healthy," and

5

had threatened to kill L.H. And there is evidence that appellant and L.H. frequently physically fought to resolve their differences, despite their physical differences. The jury heard these varying accounts and credited the state's evidence. Upon review, we regard the evidence in the light most favorable to the jury's verdict, and we assume the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Doppler*, 590 N.W.2d 627, 635 (Minn. 1999). The jury evaluated the credibility of the witnesses and concluded that the state disproved the second element of appellant's self-defense claim. The evidence is sufficient to support that determination.

The third element of self-defense considers the existence of reasonable grounds for the defendant's belief that he is in imminent danger of great bodily harm or death. *Johnson*, 719 N.W.2d at 629. "This is an objective test." *Id*. at 631 (citing *State v. Boyce*, 284 Minn. 242, 256, 170 N.W.2d 104, 113 (1969)). The state was required to disprove that appellant used a degree of force that was necessary to a reasonable person in similar circumstances. *State v. Basting*, 572 N.W.2d 281, 286 (Minn. 1997). Several witnesses testified about the brief time between the initial attack and the shooting. C.C., T.W., and an eyewitness testified that L.H.'s attack lasted a matter of seconds before appellant fired the gun. Additionally, the state presented evidence that appellant prepared for the fight by carrying a loaded firearm with him in the car and telling his friends that he would "shoot someone" if confronted. With this evidence, the jury concluded that it was not reasonable, under the circumstances, for appellant to believe that he was in imminent danger of death or great bodily harm. When viewed in the light most favorable to the jury's verdict, *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980), the evidence in the record was sufficient to

support the jury's decision that the state disproved appellant's self-defense theory beyond a reasonable doubt.

**Prosecutorial Misconduct**

The standard of review for claims of prosecutorial error depends upon whether an objection was raised at the time of the alleged error. *State v. Yang*, 774 N.W.2d 539, 559 (Minn. 2009). Appellant did not raise an objection at trial, and we therefore review under a modified plain-error standard. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). This standard requires appellant to establish that the prosecutor committed an error and that the error was plain. *Id.* An error is plain if the prosecutor's conduct contravenes caselaw, a rule, or a standard of conduct. *Id.* If appellant demonstrates that a plain error occurred, the burden shifts to the state to demonstrate that the error did not affect appellant's substantial rights. *Id.* "If the state fails to demonstrate that substantial rights were not affected, 'the appellate court then assesses whether it should address the error to ensure fairness and the integrity of the judicial proceedings.'" *State v. Davis*, 735 N.W.2d 674, 682 (Minn. 2007) (quoting *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998)).

As previously discussed, once a defendant presents evidence to support a self-defense claim, the burden shifts to the state to disprove one or more of the four elements beyond a reasonable doubt. *Johnson*, 719 N.W.2d at 629. During closing argument, the prosecutor stated that appellant "fail[ed] on the second element of self-defense" and "fail[ed] on the third element of self-defense." Appellant argues that these statements impermissibly shifted the burden of proof by suggesting that appellant failed to prove that his use of deadly force was reasonable. "[M]isstatements of the burden of proof are highly

7

improper and constitute prosecutorial misconduct." *State v. Coleman*, 373 N.W.2d 777, 782 (Minn. 1985). Here, the prosecutor addressed each of the four elements of self-defense and argued that appellant's actions on the day of the shooting demonstrated that he did not act in self-defense. While the prosecutor's closing argument contained inartful statements that could be read as misstating the burden of proof, the state's closing argument overall on the issue of self-defense did not misstate the law. *See State v. Carridine*, 812 N.W.2d 130, 148 (Minn. 2012) (reviewing "the closing argument as a whole, rather than just selective phrases or remarks that may be taken out of context or given undue prominence," in determining whether prosecutor improperly shifted burden of proof (quotation omitted)).

Moreover, even if the prosecutor did misstate the law, the error did not affect appellant's substantial rights. The state bears the burden to "show that there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict of the jury." *Ramey*, 721 N.W.2d at 302 (quotation omitted). The reviewing court considers "the strength of the evidence against the defendant, the pervasiveness of the improper suggestions, and whether the defendant had an opportunity to (or made efforts to) rebut the improper suggestions." *Davis*, 735 N.W.2d at 682. Here, the evidence in the record reveals that appellant anticipated fighting with L.H., told his friends he would have to shoot someone because he could not fight, carried a loaded weapon with him, and shot L.H. within seconds after the fight began. Additionally, the prosecutor's statements were not pervasive when the closing argument is viewed as a whole and the statements are taken in context. Lastly, the defense had an opportunity to rebut the prosecutor's improper suggestion and stressed to the jury that

"[t]he government has to prove to you that each and every element did not apply in [appellant]'s decision to use self-defense in this case."  The alleged prosecutorial misconduct, viewed in light of the entire record, is not of "such serious and prejudicial nature that appellant's constitutional right to a fair trial was impaired."  *State v. Haynes*, 725 N.W.2d 524, 529 (Minn. 2007) (quotation omitted) (concluding that reversal was not warranted on basis of unobjected-to prosecutorial misconduct).

Further, the district court properly instructed the jury on the state's burden of proof. The district court advised the jury that "[t]he defendant is presumed innocent of the charges made," and that the "State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense."  Thus, even if the prosecutor's comments during closing argument misstated the law, such comments did not affect appellant's substantial rights because the jury was properly instructed on the burden of proof.  *See Carridine*, 812 N.W.2d at 148 (holding that alleged prosecutorial error did not affect defendant's substantial rights where jury was properly instructed); *Pendleton*, 706 N.W.2d at 509 (holding that prosecutorial misconduct may be cured by district court instruction); *State v. Shoen*, 578 N.W.2d 708, 718 (Minn. 1998) (presuming that jurors follow the district court's instructions).  Thus, any misstatements of law by the prosecutor did not affect appellant's substantial rights, and appellant is not entitled to relief on the basis of this argument.

**Admission of Excited Utterance**

The state sought to introduce into evidence L.H.'s statement to S.L. that appellant threatened to shoot him.  The district court admitted the evidence under the excited-utterance exception to the hearsay rule.  Over appellant's objection, S.L. testified at trial

9

that L.H. was upset and agitated after speaking with appellant on the phone on June 24, and told her: "I just got off the phone with [appellant], and he said when he seen me, he's shooting me down, because [appellant's ex-girlfriend] called him and told [him] I threatened . . . her."

Evidentiary rulings rest within the sound discretion of the district court and will not be reversed absent a clear abuse of discretion. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). Appellant bears the burden of establishing that the district court abused its discretion and that he was prejudiced. *State v. Ahmed*, 782 N.W.2d 253, 259 (Minn. App. 2010). Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Minn. R. Evid. 801(c). Although hearsay generally is not admissible at trial, Minn. R. Evid. 802, an out-of-court statement offered to prove the truth of the matter asserted may be admissible if it is covered by an exception to the hearsay rule or is exempted from the definition of hearsay. *State v. Robinson*, 699 N.W.2d 790, 794 (Minn. App. 2005), *aff'd*, 718 N.W.2d 400 (Minn. 2006).

Appellant claims that the district court abused its discretion in determining that L.H. was under an "aura of excitement." The excited-utterance exception allows into evidence out-of-court statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Minn. R. Evid. 803(2); *see also State v. Edwards*, 485 N.W.2d 911, 914 (Minn. 1992) (setting forth elements of an excited utterance as "a startling event or condition," a statement that "relates to the event or condition," and "the statement is made under the stress caused by the event or condition"). Generally, an excited utterance is admissible if the declarant made the

10

statement while under the "aura of excitement" resulting from an event. *State v. Martin*, 614 N.W.2d 214, 223-24 (Minn. 2000) (quotation omitted). "The rationale [for the excited-utterance exception] stems from the belief that the excitement caused by the event eliminates the possibility of conscious fabrication, and insures the trustworthiness of the statement." *State v. Daniels*, 380 N.W.2d 777, 782 (Minn. 1986) (quotation omitted). It is within the district court's discretion to determine whether the declarant was under an "aura of excitement." *Edwards*, 485 N.W.2d at 914 (quotation omitted).

The supreme court has held that a statement falls within the excited-utterance exception when a witness testifies that the declarant was "very upset, extremely agitated, and very afraid." *State v. Bauer*, 598 N.W.2d 352, 366 (Minn. 1999) (quotation marks omitted). L.H.'s statement to S.L. related to a threat of violence, and it was made "immediately after he hung up the phone or very shortly thereafter." We discern no abuse of discretion in the district court's decision to admit L.H.'s statement to S.L. under the excited-utterance exception.

Even if the district court abused its discretion by admitting evidence of the June 24 phone call, the evidentiary ruling did not significantly affect the jury's verdict. A defendant is not entitled to a new trial for erroneously admitted evidence "unless there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *State v. Asfeld*, 662 N.W.2d 534, 544 (Minn. 2003) (quotation omitted). S.L.'s testimony amounted to a relatively small portion of the evidence presented and did not significantly affect the verdict.

11

**Ineffective Assistance of Trial Counsel**

We analyze ineffective-assistance-of-counsel claims as trial errors under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Dereje v. State*, 837 N.W.2d 714, 721 (Minn. 2013). Under that analysis, "an appellant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and that a reasonable probability exists that the outcome would have been different but for counsel's errors." *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003) (quotation omitted). Appellant asserts that his trial counsel was ineffective because his counsel did not subpoena certain telephone records. But "[d]ecisions about which witnesses to call at trial and what information to present to the jury are questions of trial strategy that lie within the discretion of trial counsel." *Leake v. State*, 737 N.W.2d 531, 539 (Minn. 2007). We generally will not review an ineffective-assistance-of-counsel claim based on trial strategy. *See State v. Nicks*, 831 N.W.2d 493, 506 (Minn. 2013). We presume that a trial counsel's performance is reasonable, *Schneider v. State*, 725 N.W.2d 516, 521 (Minn. 2007), and appellant has not demonstrated otherwise on appeal. Appellant also has not demonstrated that a reasonable probability exists that the jury's verdict would have been different if the telephone records had been admitted into evidence. We therefore conclude that appellant is not entitled to relief based on this argument.

**Affirmed.**