*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0700**

State of Minnesota,
Respondent,

vs.

Leland Ronald Nelson, II,
Appellant.

**Filed July 27, 2015
Affirmed
Minge, Judge\***

Fillmore County District Court
File No. 23-CR-12-874

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Brett A. Corson, Fillmore County Attorney, Lee Novotny, Assistant County Attorney, Preston, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Peterson, Presiding Judge; Johnson, Judge; and Minge, Judge.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**MINGE**, Judge

After a jury trial, appellant was convicted of six counts of criminal sexual conduct for contacts he had with a six-year-old girl and her four-year-old brother, children of his girlfriend. Appellant challenges his convictions, arguing that the video recordings of the children's out-of-court statements should not have been admitted into evidence and that the court erred by allowing an investigating police officer to testify that he believed the children. We affirm.

## FACTS

Jeremy Larson contacted the Fillmore County Sheriff's Office in late October 2012 because he suspected that his six-year-old daughter S.L. had been sexually abused. Larson told law enforcement that he was sitting with S.L. on the couch when S.L. started rubbing his penis over his pants. When Larson told S.L. that she was not supposed to touch anybody there, S.L. started crying. Larson asked why she was crying, and S.L. responded that "Leland" always let her rub his penis. "Leland" was appellant Leland Nelson, the boyfriend of S.L.'s mother. S.L. told Larson that she had to rub Nelson's "pee-pee" to get snacks. Larson contacted police.

A Fillmore County Social Services staff person interviewed S.L. The staffer asked S.L., "Has anyone ever asked you to touch them in a spot that you did not want to touch them?" S.L. responded, "They all -- Leland told me to touch his pee-pee always when I get snacks." S.L. also told the staffer that when she rubbed Nelson's penis, pee came out and Nelson let her drink it. S.L. said this occurred more than once while her mother was

at work.  She also shared that her four-year-old brother, C.L., "had to do the same thing" and "rub the pee-pee part."  S.L. reported that Nelson told the children not to tell their mother.

A sheriff's deputy interviewed C.L.  During this interview the following exchange occurred:

> [DEPUTY]: Okay. And when Leland watches you, do -- what do you do when Leland watches you?  What are some of the things you do?
> [C.L.]: Rub him -- his pee-pee.
> [DEPUTY]: You rub his pee-pee?
> [C.L.]: And suck on his pee-pee.

C.L. further explained that Nelson's penis went "out and in" his mouth.  C.L. claimed that this only occurred one time and that he saw it happen to his sister, too.

Nelson was charged with ten counts of criminal sexual conduct in December 2012. The day before Nelson's jury trial began, the district court determined that S.L. was competent to testify. The same day, the court initially determined that C.L. was not competent to testify based upon an examination conducted by the judge.  The state asked the court to reconsider, and, after conducting a second examination the morning of the trial, the district court concluded that C.L. was competent and allowed him to testify.

The state requested permission before trial to show the jury video recordings of the interviews with S.L. and C.L.  The district court found that the statements in the interviews bore sufficient indicia of reliability to be admissible under Minnesota Statutes section 595.02, subdivision 3 (2012).  But the court clarified that the recorded interviews were only admissible "as long as the children testify," pursuant to the statute.

3

The state, following the court's directive, called C.L. to testify at trial. His testimony was scattered. He initially testified that he did not have a sister but then remembered that he did have a sister and so identified S.L. While a witness, C.L. got up from his chair, moved around, and at one point walked to the prosecution's table. He was also distracted by the microphone at the witness chair. When the prosecutor asked him who "Leland" was, C.L. testified that he was "a mean guy who is mean to mom." The prosecutor quickly ceased questioning C.L., and Nelson's attorney did not cross-examine him.

When S.L. testified, she identified Nelson in the courtroom. The prosecutor asked S.L. how she knew Nelson, and she responded, "Because he was there when this happened." But when the prosecutor asked what happened, S.L. said, "Don't you remember from a long time ago?" S.L. testified that Nelson never babysat her. She said that she remembered what she had told the social services staffer in the interview and that she had told the truth. S.L. never repeated and was never asked what she told the staffer or her father while on the stand. Nelson's attorney did not cross-examine S.L.

Larson, the children's father, also testified at trial for the state. Nelson's attorney initially objected just to the admission of statements S.L. made to her father, arguing that they were hearsay. The state responded that it planned to lay the foundation to admit the girl's statements as excited utterances. The district court reserved its ruling and told the defense to object when the state actually asked Larson for S.L.'s statements. But Nelson's attorney never objected after the question was asked or after Larson testified to S.L.'s statements. Larson testified that his daughter told him, "Leland lets me rub his

4

pee-pee for snacks." He also testified that she said Nelson occasionally "had her suck his pee-pee."

Appellant Nelson did not testify at trial. But the state called the sheriff's deputy to testify about an interview he conducted with Nelson during the criminal investigation. The deputy described a portion of that interview as follows:

> Q. Did you ever ask [Nelson] point blank, "Did it happen?"
> A. I did.
> Q. And did he answer?
> A. He did. He denied that it happened. At that point I became very direct with Mr. Nelson, and I told him that I did believe it happened. I told him that I believed the children were telling the truth and that he needed to talk about it, enable himself to get some help and help these children to deal with what happened.

Nelson's attorney did not object to this line of questioning.

The state dismissed four of the criminal-sexual-conduct counts during trial. The jury found Nelson guilty of the remaining six counts. The district court sentenced Nelson to concurrent prison sentences of 144 and 168 months for two of the convictions. Nelson appeals.

## D E C I S I O N

### I.

The first issue is whether the district court erred in admitting the recorded interviews of S.L. and C.L. under Minnesota Statutes section 595.02, subdivision 3 (2012). Because Nelson specifically acknowledges that he did not object to the admission of the recordings at trial, we review the admission of the statements under the plain-error standard. To prevail, Nelson must show: (1) error, (2) that is plain, and

(3) that affects substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If Nelson satisfies these three requirements, we will only reverse his conviction if necessary "to ensure fairness and the integrity of the judicial proceedings." *Id.*

Minnesota Statutes section 595.02, subdivision 3, provides:

> An out-of-court statement made by a child under the age of ten years . . . alleging, explaining, denying, or describing any act of sexual contact or penetration performed with or on the child . . . not otherwise admissible by statute or rule of evidence, is admissible as substantive evidence if:
>
> (a) the court or person authorized to receive evidence finds, in a hearing conducted outside of the presence of the jury, that the time, content, and circumstances of the statement and the reliability of the person to whom the statement is made provide sufficient indicia of reliability; and
>
> (b) the child . . . either:
>
> (i) testifies at the proceedings; or
>
> (ii) is unavailable as a witness and there is corroborative evidence of the act; and
>
> (c) the proponent of the statement notifies the adverse party . . . .

Nelson first argues that the children's statements in the recorded interviews were not sufficiently accurate or reliable under subdivision 3(a). Nelson focuses on the reliability of the statement, not on the person to whom it is made. Next Nelson contends that the children's testimony at trial was so insufficient that they became unavailable and that there was no corroborative evidence of the act as required by subdivision 3(b)(ii). We address each of these arguments in turn.

***Reliability of Statements***

When determining whether a child's out-of-court statements are sufficiently reliable, section 595.02, subdivision 3(a), instructs district courts to consider the "time, content, and circumstances of the statement and the reliability of the person to whom the statement is made." But courts should also consider "a number of additional factors," including "the knowledge of the declarant, the motives of the declarant and witnesses to speak truthfully[,] . . . the proximity in time between the statement and the events described[,] . . . whether the person talking with the child had a preconceived idea of what the child would say[,] and the lack of leading or suggestive questions." *In re Welfare of L.E.P.*, 594 N.W.2d 163, 170 (Minn. 1999) (quotation omitted). Other relevant factors also include "spontaneity, consistent repetition, mental state of the declarant, use of terminology unexpected of a child of similar age, and lack of motive to fabricate." *Id.* But the factors listed are not exclusive: district courts "have considerable leeway in their consideration of appropriate factors as long as the factors considered relate to whether the child was particularly likely to be truthful." *Id.* (quotation omitted). The determination of whether the statements are reliable should be based on the totality of the circumstances. *State v. Edwards*, 485 N.W.2d 911, 915 (Minn. 1992).

The district court found that the persons to whom S.L. and C.L. made their statements, the social services staffer and the deputy, were both reliable as they had been trained in the Cornerhouse method. It found that the children's responses were spontaneous, did not appear to be coached, and were "of their own words." The court further noted that the statements were consistent and that the interviewers "refrained as

7

best they could from leading questions." These findings are supported by the record. Based on the totality of the circumstances, the district court concluded that the children's out-of-court statements contained sufficient indicia of reliability.

Nelson disputes this conclusion. He points out several factors that were not present in this case, including that the interviews occurred a year after the alleged abuse and that the interviewers anticipated hearing the abuse. But not every factor needs to be satisfied for a child's out-of-court statements to be admissible under section 595.02; instead, the decision should be made based on the totality of the circumstances. *Edwards*, 485 N.W.2d at 915. The district court here made its decision based on the totality of the circumstances. We conclude that its decision does not constitute plain error.

### *Unavailability of Children to Testify*

Nelson argues that S.L.'s and C.L.'s conduct at trial made them unavailable witnesses and that the state lacked corroborating evidence of the acts described in their interviews. Even if the children's conduct at trial made them effectively unavailable to testify, their statements are nevertheless admissible if "there is corroborative evidence of the act[s]." Minn. Stat. § 595.02, subd. 3(b)(ii).

S.L.'s out-of-court statement is corroborated by her conduct with and statements to Larson, her father, in October 2012. Larson testified that when S.L., unprompted and completely unsolicited, started rubbing his penis she volunteered that she always had to rub Nelson's "pee-pee" to get snacks. S.L. told the social services staffer in the recorded interview, "Leland told me to touch his pee-pee always when I get snacks." Larson's

8

testimony corroborates S.L.'s out-of-court statement, showing that S.L.'s "account of the abuse has remained consistent over time." *L.E.P.*, 594 N.W.2d at 173.

C.L.'s out-of-court statement is corroborated by S.L.'s statement in her interview that C.L. "had to do the same thing" and "rub the pee-pee part." C.L. told the deputy in his recorded interview that he had rubbed and sucked on Nelson's "pee-pee." He also said he saw his sister do the same thing. S.L.'s disclosures about the abuse of C.L. corroborate his out-of-court statement as required under the statute.

Because the district court correctly concluded that both children's out-of-court statements were sufficiently reliable and because there is corroborative evidence of both statements, we conclude that the district court did not commit plain error by admitting the recorded interviews under section 595.02, subdivision 3.

## II.

The second issue raised in this appeal is whether the admission of Larson's (the father's) testimony about the statements S.L. made to him in October 2012 was reversible error. We recognize that prior to trial Nelson objected to the statements to Larson. However, the district court judge reserved its ruling and instructed Nelson's attorney to renew his objection at the time the statements were introduced. The objection was not renewed. Nelson agrees that on appeal the plain-error standard for review applies.

The state explained at the time of the premature objection that it would offer the statements under the excited-utterance exception to hearsay. The excited-utterance exception allows into evidence statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

9

Minn. R. Evid. 803(2). Nelson argues that the statements S.L. made to Larson about her prior contacts with Nelson do not sufficiently relate to the startling event, which Nelson asserts was the abusive contact itself. The state, on the other hand, asserts that the startling event was her father's (Larson's) questioning of S.L., which caused her to blurt out that Nelson had her touch him for snacks. When S.L. started to rub Larson's groin, Larson scolded her and asked her what she was doing, and she began to cry. Larson's surprised reaction and questioning created a startling event for S.L. that caused her to disclose the conduct with Nelson to explain her actions. At the time she revealed this activity with Nelson, she was under duress due to her father's strong reaction.

We conclude that in this context it was not plain error to find that the excited-utterance exception to the hearsay rule applies. S.L. was under the stress of excitement when she made the statements to Larson, which "eliminates the possibility of conscious fabrication, and insures the trustworthiness of the statement." *State v. Daniels*, 380 N.W.2d 777, 782 (Minn. 1986). In short, the admission of S.L.'s statements to Larson did not constitute plain error.

**III.**

The third issue is the admission of the deputy's testimony that he told Nelson during an interview that he "believed the children were telling the truth." Again, because there was no objection to this testimony at trial, we review under the plain-error standard.

We do not decide whether admission of this testimony was error that was plain because, even if it was, we conclude it did not affect Nelson's substantial rights. Under the third requirement of the plain-error standard, Nelson must show that the erroneous

10

admission of the statements "was prejudicial and affected the outcome of the case." *Griller*, 583 N.W.2d at 741. Here, the deputy's statement was addressed to Nelson in the context of jailhouse questioning in which the deputy was urging him to admit what he allegedly had done. The deputy simply recounted the interview at trial. The prosecutor did not repeat or refer to the deputy's statement at any other point during the trial. The statement was not used in closing argument. The jury was also able to hear the children's statements for themselves and assess their credibility independently. Nelson has the burden of demonstrating that an error prejudiced him and affected the outcome of the case. *See State v. Carridine*, 812 N.W.2d 130, 142–43 (Minn. 2012) ("[T]he defendant bears the heavy burden of showing that any error was prejudicial." (quotation omitted)). He has not done so here, and we affirm his conviction.

## IV.

In a pro se supplemental brief, Nelson contends that he received ineffective assistance of counsel from his trial lawyer. But Nelson does not specify how his "defense counsel's performance was deficient" or how "the deficient performance prejudiced the defense." *State v. Gustafson*, 610 N.W.2d 314, 320 (Minn. 2000). Because Nelson does not support his claim with factual or legal arguments, we do not further consider his ineffective-assistance claim. *See State v. Krosch*, 642 N.W.2d 713, 719 (Minn. 2002) (holding that a pro se claim without argument is deemed waived).

**Affirmed.**